UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LUTHER GRAHAM | : | CIVIL ACTION |
| Plaintiff, | : | No.: 16-1578-PGS-LHG |
| | : | No.: 19-18763-PGS-LHG |
| v. | : | |
| MONMOUTH COUNTY BUILDINGS AND GROUNDS *et. al.* | : | |
| Defendants. | : | |

**PLAINTIFF'S SURREPLY IN FURTHER SUPPORT OF HIS MOTION TO ENFORCE**

    **I.**    **Introduction and and Basis for Sur-reply**

On April 20, 2020, the Parties participated in oral argument on Plaintiff's Motion to Enforce. During the proceeding, Plaintiff orally sought and was granted leave to file the instant Sur-Reply. In addition to asking to supplement the record to submit a final email from Defendant County's Counsel respecting his understanding of his authority, the Court invited Plaintiff to provide any additional material in support of the points he raised at oral argument. Therefore, Plaintiff respectfully submits as follows:

    **II.**    **Legal Argument**

    **1.)**    **Pursuant to Third Circuit jurisprudence, this Court should hold an Evidentiary Hearing to build a proper Record for this Court's Decision on the Motion to Enforce**

As a reminder, a settlement agreement is enforceable if: (1) both parties have manifested an intention to be bound by its terms; (2) the terms are sufficiently definite to be specifically enforced; and (3) there is consideration. *Channel Home Centers v. Grossman,* 795 F.2d 291, 298-99 (3d Cir.1986). During argument, Defendants conceded elements two (2) and three (3) are not

in dispute. The Parties don't dispute that the settlement has clear and definite terms, nor that there is consideration for the settlement. Defendant County *argues* that its Counsel (Douglas Kovats) did not have consent to enter into this settlement on the County's behalf (and thus the only way to have obtained authority was through a Freeholder vote). However, all record evidence before this District Court <u>refutes</u> that.

When asked on the record during Monday's oral argument exactly *what* authority Mr. Kovats did have going into these settlement discussions (including attending a private mediation on March 6, 2020), the only item Mr. Kovats failed to articulate for this Court was the authority he had in terms of <u>monetary consideration</u>. The answer to this question is the single most critical piece of evidence this Court should consider in determining if a settlement was reached: <u>did the Freeholders give Mr. Kovats any authority to settle this matter on behalf of Monmouth County</u>?

During Monday's oral argument, Mr Kovats only shared that he had discussed "general parameters" of the settlement with County Counsel (Michael Fitzgerald)(acting as an agent of the County), including a no-rehire provision and dismissal of litigation against all County Defendants. The facts remains, however, that Defendant Monmouth County's counsel (Mr. Kovats) appeared at the mediation to negotiate <u>monetary consideration</u>, and ultimately conveyed a formal monetary offer *on behalf of Defendant Monmouth County and all named Defendants*, for Mr. Graham to accept or reject by close of business Tuesday, March 10, 2020. When Mr. Graham rejected the take it or leave it proposal on Tuesday evening, and relayed a formal Counter (<u>to</u> Mr. Kovats), the response was that he needed to speak with his client and would get back to the undersigned. Shortly thereafter, he confirmed via telephone the Parties had reached a settlement. To suggest to this Court he had *no* authority from his <u>client</u>, who is Defendant Monmouth County defies all sense of logic and common sense.

The record continued after Mr. Kovats informed this District Court the matter was resolved:

Good Morning,

**<u>As Ms. Burke has explained we are agreed on a global settlement of Mr Graham's claims against Monmouth County and it's employees</u>**.

Exhibit C (attached to Plaintiff's principal brief). This is the record before the Court – and not Mr. Kovtas' reservations that he must obtain authority for this settlement from the Freeholders of Monmouth County. Mr. Kovats' writing to this tribunal as an officer of the Court is no different than placing the terms of a settlement on the record.

To that end, Plaintiff asked this Court during Monday's argument to supplement the record to include the final email by Mr. Kovtas respecting his own understanding of his authority in this case. When the Freeholders purportedly rejected the settlement, Mr. Kovats wrote to the undersigned as follows:

> I have just concluded a telephone call with County Counsel Michael Fitzgerald, (in light of COVID -19 issues it has been difficult to reach him). County Counsel advised that after meeting with the Monmouth County Freeholders, the Freeholders rejected the settlement. **<u>As I had represented to you and the Court it was not my understanding that the settlement would be rejected</u>**.

Exhibit "D," attached hereto (emphasis added).[1] How can an attorney, representing his client, have an understanding of whether this settlement would be accepted or rejected if he had never had any authority or discussions about monetary consideration in the first instance? The notion that Mr. Kovats went into these very serious settlement negotiations, starting with a formal private mediation (costing the Parties several thousand dollars) and continuing the negotiations thereafter without <u>any</u> authority from the Freeholders equates to one of two things: 1.) he had no authority

---

[1] and labeled as "D" to avoid confusion and maintain sequence with Plaintiff's other exhibits to this briefing, which are already of record as A, B and C.

and was committing legal malpractice and serious ethics violations (which the undersigned does not believe to be the case); or 2.) had authority and had already expressly discussed with his client, be that through Michael Fitzgerald (on behalf of the Freeholders), what Monmouth County would be willing to offer to fully and finally resolve the two currently pending litigations.  The above is the record before the Court, by way of unrefuted documents.

Yet, Defendant County asks this Court to reject these documents based upon a self-serving affidavit simply saying Mr. Kovats had no such authority.  This cannot satisfy the "**heavy**" burden Defendant County has of persuading this Court there was a lack of authority. A party who asserts lack of authority must sustain "**a heavy burden to establish that [the] attorney acted without any kind of authority** . . . ."  The party asserting lack of authority must sustain "a heavy burden to establish that [her] attorney acted without any kind of authority." *Jennings v. Reed*, 381 N.J. Super. 217, 231, 885 A.2d 482, 490 (Super. Ct. App. Div. 2005)(citations omitted); see also *McKenna v. Pac. Rail Serv.*, 817 F. Supp. 498, 520 (D.N.J.1993). Under New Jersey law, settlement agreements made by attorneys when acting within the scope of their authority are enforceable against their clients. *Jennings,* at 490. Further, an attorney is presumed to possess authority to act on behalf of the client. *Id.*

To further why this District Court must hold an Evidentiary Hearing is to determine <u>if the Freeholders ever met as a legislative body to approve or reject this settlement in the first instance</u>. Defendant County has offered *no* public meeting minutes nor executive session minutes in support of the fact that this governing body acted <u>in its legislative capacity</u> to consider the recommendation to settle from its County Counsel (Michael Fitzgerald) and litigation Counsel (Douglas Kovats). In fact, the email cited above (attached hereto as "Exhibit D") suggests that they never actually put the settlement to a formal vote.  The March 20, 2020 email from Mr. Kovats (Ex. D) only states

that Mr. Fitzgerald *met with* the Board of Freeholders (which appears to have been in an informal manner). The entire reason Defendant County seeks to *avoid* its obligations under this contract is by arguing it is a public body and must act formally to approve all contracts. Yet --- no such public meeting nor executive session appears to have occurred. Instead, what is most concerning, is the County seems to have had a change of heart after entering into this settlement based strictly on Mr. Graham's questions surrounding his pension/continued health insurance benefits. If this is the case, Defendant County is putting on a charade for this Court – arguing no settlement since it had to submit this to a formal vote, when **no such formal vote has ever occurred**. If this is the case, Plaintiff intends to seek formal sanctions in the form of attorneys' fees and costs for having a District Court intervene to enforce this contract, and sanctions by way of this Court's inherent authority under Section 1927 for any rouse presented to this District Court.[2]

Even this District Court raised concerns at Monday's oral argument of maintaining the confidentiality of these proceedings in light of the Open Public Meetings Act, *N.J.S.A.* 10:4-6, *et seq.* The Open Public Meetings Act, enacted in 1975, says the public has a right "to be present at all meetings of public bodies, and to witness in full detail all phases of the deliberation, policy formulation and decision making of public bodies." *N.J.S.A* 10:4-7. The OPMA follows

---

[2] Section 1927, which states in relevant part:

> Any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

the line of "a strong tradition both in this State and in the nation favoring public involvement in almost every aspect of government." *Polillo v. Deane*, 74 N.J. 562, 569, 379 A.2d 211, 214 (1977).

Based upon the foregoing, Plaintiff persists in this request for an evidentiary hearing, at such a time Defendant County's Counsel should be required to appear and present all evidence surrounding his extent of authority entering into the March 6, 2020 mediation and to engage in negotiations on behalf of the County thereafter, and present evidence reflecting a vote held by the Freeholders occurred, when and the votes that were cast.

ONLY IF it is determined that Mr. Kovats did not have authority to bind the County, then the Court should order the settlement enforced against the individual Defendants (discussed further in Section 3), and should also order Defendant County's Counsel <u>to present the settlement in good faith to the Freeholders for approval</u>.  This is consistent with *Greer v. City of Highland Park*, No. 15-12444, 2019 U.S. Dist. LEXIS 24665, at *2 (E.D. Mich. Jan. 10, 2019)("the Court recommends holding the individual officers bound by the settlement agreement and the City bound to present the settlement to city council for approval.").  If, however, the evidence at the Hearing shows that Mr. Kovats did have authority to authorize a settlement on the County's behalf, this Court should simply grant the Motion to Enforce.

**2.) Judge Lechner's Opinion in *Newark Branch, NAACP v. Township of West Orange*, 786 F.Supp. 408 (D.N.J. 1992) is fatal to Defendant County's argument**

While the issue in J. Lechner's opinion was the ability to bind the Township of West Orange <u>to a consent decree</u> negotiated through its Counsel (and without a vote of town council approval), the outcome would be no different for the analysis pertaining to a settlement agreement here. A consent decree — a particular term of settlement — carries the same presumption of finality *Newark Branch, NAACP v. Township of West Orange*, 786 F.Supp. 408, 422 (D.N.J. 1992) (citations omitted). Moreover, consent decrees are judgments; thus they are judicial acts,

but also documents with attributes of a contract. *Fox v. United States Dep't of Hous. & Urban Dev.*, 680 F.2d 315, 319 (3d Cir.1982). In *Newark Branch*, *NAAAP*, the District Court enforced the consent decree based upon the attorney's implied authority articulating as follows:

> In this case, Dooley had implied authority to enter the Consent Decree. Dooley states he understood the discussion at the 13 February 1990 Meeting set forth the perimeters of the consent decree and if he could get the proposed consent decree in substantial compliance with those terms he was authorized to settle the case. Dooley also states he had subsequent discussions with the Town Council Members which led him to believe he was authorized to enter the Consent Decree

*Newark Branch, NAACP,* at 424 (internal citations to the record omitted). Furthermore, "[a] municipal corporation is bound only by the acts of an agent that are expressly or implicitly authorized. Apparent authority does not suffice." *Seacoast Realty Co., v. W. Long Branch*, 14 N.J. Tax 197, 203 n.2 (Tax 1994). Defendant County's argument strays quite far from the law of the land here --- which is grounded in contracts. Accepting Defendant County's arguments, no municipal attorney would ever have the ability to negotiate any contracts on behalf of the bodies it represents. Defendants County has also failed to cite to any provision in the Monmouth County's Administrative Code, nor any New Jersey Statute, governing the dispute in this matter and whether and to what exact the policy through PMA is a consent policy or all authority was obtained strictly through the carrier (and whether same was consented to by the Freeholders in entering into a contractual insurance policy with PMA).

Given everything that transpired in this case, and the record evidence showing the Freeholders consented to a settlement *through their attorney*, they should be bound to the contract they knowingly entered into.

**3.) The Motion to Enforce Individual Defendants Compton and Kryzanowski should be granted as Unopposed and there is no legal authority which would relieve them of their obligations under this binding and enforceable settlement agreement**

Defendant Compton and Kyrzanowski took no position on the Motion to Enforce and failed to file any formal opposition. For that reason alone, this Court is well within its discretion to grant the Motion to Enforce against the two (2) individual Defendants. They are admitted Parties to the litigation, named in their personal capacities, and do not contest that they agreed to settle the matter with Mr. Graham. Their disagreement over who (out of all Defendants) should contribute to the settlement <u>is between them and their co-defendants, and not for this Court to have to sort out</u>. They all have counter claims against one another for contribution and indemnification and can properly pursue those claims in state court.

In addition to the District Court opinion that Plaintiff has already cited on this point (in his Reply Brief[3]), Plaintiff another District Court opinion where a Court declined to allow *an individual Defendant* to be relived from a global settlement and enforced the settlement against the individual who agreed to settle (irrespective of what they personally desired to contribute). In *Integrated Mktg. & Promotional Sols. v. JEC Nutrition LLC*, 2008 U.S. Dist. LEXIS 57468 (S.D.N.Y. July 28, 2008), the principal of the company gave counsel authority to conclude a settlement agreement for any amount up to $180,000, and the parties' attorneys settled the case for $ 150,000. The principal later argued that the settlement was invalid because he only agreed to be *personally liable* in excess of $75,000. The court held that the settlement agreement was binding because the defendants' counsel had apparent authority to bind the principal to the terms of the agreement. Both Defendant Compton and Krzyanowski gave authority to their attorneys to settle the litigation in toto, knowing full and well the amount that was to be paid to Mr. Graham under

---

[3] *Greer v. City of Highland Park*, No. 15-12444, 2019 U.S. Dist. LEXIS 24665 (E.D. Mich. Jan. 10, 2019)

the contract. Their personal attorneys' arguments on Monday during oral argument that they did not speak with *the undersigned personally* is of no moment. The discussions negotiating a settlement from *all Defendants* were ultimately made to the undersigned through Douglas Kovats who formally conveyed the matter was settled as to all Defendants and the Parties' agreed on one (1) monetary figure.

The Individual Defendants have not only responded by have presented no authority to refute the cases Plaintiff has presented on this point. For these reasons, the Motion to Enforce against the Individual Defendants should be enforced.

### III.    Conclusion

Based upon the foregoing, Plaintiff respectfully request that the Motion to Enforce be granted, or alternatively that this Court conduct an evidentiary hearing pertaining to County Counsel's authority to enter into this binding agreement on the County's behalf.

Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: */s Christine E. Burke*

_____

Christine E. Burke
Karpf, Karpf & Cerutti, P.C.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
Phone: (215) 639-0801
Fax: (215) 639-4970
cburke@karpf-law.com

Date: April 24, 2020

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LUTHER GRAHAM | : | CIVIL ACTION |
| Plaintiff, | : | No.: 16-1578-PGS-LHG |
| | : | No.: 19-18763-PGS-LHG |
| v. | : | |
| MONMOUTH COUNTY BUILDINGS AND GROUNDS *et. al.* | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I certify on the date set forth below, that I served Defendants with Plaintiff's Sur-Reply Brief in further support of his Motion to Enforce via electronic filing to counsel of record below:

Daniel R. Roberts, Esq.
Douglas J. Kovats, Esq.
Kenney, Gross, Kovats & Parton
(732) 530-7500 Phone
droberts@kenneygross.com
*Attorney for Defendant Monmouth County*

Patricia B. Adams, Esq.
Campbell, Foley, Delano & Adams, LLC
padams@cambellfoley.com
*Attorney for Defendant David Krzyanowski*

Micci J. Weiss, Esq.
Cleary Giacobbe, Alfieri & Jacobs
mweiss@cgajlaw.com
*Attorney for Defendant Robert W. Compton*

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Christine E. Burke*_____
Christine E. Burke, Esq.

Dated: April 24, 2020