UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUTHER GRAHAM, : <br> : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> : <br> MONMOUTH COUNTY : <br> BUILDINGS AND GROUNDS, et al., : <br> : <br> Defendants. : <br> : | CASE NO.: 3:19-cv-18763 (PGS)(LHG) <br><br> **OPINION AND ORDER** |

**THIS MATTER** comes before the Court by Plaintiff, Luther Graham's ("Plaintiff") Motion to Compel Documents Withheld as Privileged (the "Motion"). [Docket Entry No. 53]. In support of the Motion, Plaintiff has filed a Brief in Support of the Motion ("Brief in Support") [Docket Entry No. 53-1] and supporting exhibits [Docket Entry Nos. 53-2 to 53-14]. Defendant, County of Monmouth (the "County"), has filed an Opposition to the Motion ("Opposition"). [Docket Entry No. 54]. Further, Plaintiff has filed a Reply Brief in Further Support of the Motion ("Reply"). [Docket Entry No. 55].[1]

The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Rule 78.1.

**I.     BACKGROUND**

This case is the second of two lawsuits filed by Plaintiff against the County. Plaintiff was an electrician for the County, and in *Graham I*, he brought suit alleging he was not given a promotion to which he believes he was entitled. *See* [Docket Entry No. 1] ("Complaint") at ¶¶

---

[1] Although Local Civil Rule 7.1(d)(3) expressly provides that no reply brief may be filed absent permission from the Court, and Plaintiff did not seek such permission, the Court has nonetheless taken the Reply into consideration.

31-32. Before trial was set to begin in *Graham I*, Plaintiff received a formal notice of removal from the County and was subsequently terminated. *Id.* at ¶¶ 48-59. In this litigation, *Graham II*, Plaintiff challenges the decision to terminate his employment. Again, he cites discrimination but also alleges that the County has retaliated against him for bringing *Graham I*. *Id.* at ¶¶ 67-78.

      After the parties produced documents, depositions proceeded through late August 2020. Brief in Support at 1. Among those deposed were Michael Fitzgerald, County Counsel, and Stephen Kleinman, Assistant County Counsel, each of whom was identified as being involved in the decision to terminate Plaintiff. *Id.* at 2. According to Plaintiff, Fitzgerald testified that he, Kleinman and Douglas Kovats, outside litigation counsel for the County, recommended Plaintiff's termination. *Id.* Thereafter, Plaintiff asked the Court to compel the deposition of Kovats [Docket Entry No. 40] and moved to disqualify him as counsel in this litigation [Docket Entry No. 41]. Although the Court denied Plaintiff's motion to disqualify as premature, the undersigned compelled the County to produce Kovats for a deposition and Kleinman for a second deposition. *See* Order dated April 6, 2021 (the "April 6th Letter Order"). [Docket Entry No. 46]. Furthermore, the undersigned ordered the County to produce all responsive communications surrounding the termination recommendation, as well as any necessary privilege log. *Id.* The County has produced two privilege logs to date. The First Log [Docket Entry No. 53-13] was initially provided on August 7, 2020 and revised on May 12, 2021, and the Second Log [Docket Entry No. 53-14] was provided on April 28, 2021 and relates to additional documents produced following the Court's April 6th Letter Order. Brief in Support at 11.[2]

      The present dispute arises out of Plaintiff's efforts to determine who within the County recommended Plaintiff's termination and the events which led to that course of action. As this

---

[2] Unless otherwise indicated, references to page numbers herein shall be to those automatically generated by the electronic filing system (PACER).

Court has previously recognized, the identities of the individuals that partook in the process leading to the discipline and their reasons for making a recommendation of termination are very relevant to this litigation because intent is a critical factor in any retaliation action. April 6th Letter Order at 1. Discovering this information has been more difficult than one would imagine, as demonstrated by the below testimony elicited by Plaintiff:

- Fitzgerald (County Counsel) testified that he, Kleinman (Assistant County Counsel), and Kovats (outside counsel for the County) "discussed an appropriate determination of what discipline should be, but that is a recommendation that we would then make to the Freeholders." Brief in Support at 4-5.

Things began to get trickier from there:

- Kovats, whose deposition was ordered by the Court, testified that he did not agree with Fitzgerald's characterization of the process which led to the recommendation of termination being disseminated to the Freeholders, and he did not recall participating in any collective action which led to the eventual termination of Plaintiff. *Id.* at 5-6.

- On the other hand, Kleinman, when confronted with Fitzgerald's testimony, declined to answer and asserted that whether he partook in a collective decision to recommend Plaintiff's termination was somehow privileged. *Id.* at 8.

So, Kovats denied participation in the termination recommendation and Kleinman refused to answer. Unfortunately for Plaintiff, testimony from non-attorney County witnesses did not clear things up:

- Defendant, Richard Compton (Superintendent of the Department of Building and Grounds), who supervised Plaintiff's department, testified that he had no involvement in the process which led to the termination recommendation. *Id.* at 9.

- Terri O'Connor (County Administrator) testified that she only reviews discipline recommendations and that Plaintiff's termination recommendation came from the Office of Professional Standards. She further testified that while Glenn Talavera is the head of that department, she does not know if he personally passed along the termination recommendation or if someone else handled the matter. *Id.* at 9-10.

- Talavera (Supervisor of the Office of Professional Standards) testified that Compton, Fitzgerald, and possibly Kleinman were responsible for the termination recommendation. *Id.* at 10.

After the parties filed competing letters regarding this issue, the undersigned conducted a telephone conference with counsel on May 24, 2021. [Docket Entry Nos. 48, 50, 51]. The Court ordered the County to submit an affidavit identifying who had made the initial termination recommendation. Brief in Support at 7. Kovats submitted an affidavit on behalf of the County which stated in relevant part that Fitzgerald had recommended termination to Talavera after conferring with counsel. [Docket Entry No. 52]. The affidavit further stated that upon being advised of Talavera's conclusion, O'Connor authorized the County's Office of Professional Standards to proceed with Plaintiff's termination. *Id.*

Based on the testimony from Fitzgerald and the Kovat affidavit's reference to the fact that Fitzgerald had conferred with counsel, Plaintiff still finds himself in the dark about the events that led to his termination and who exactly was involved in the decision-making process. As a result, Plaintiff seeks to pierce the attorney-client privilege and discover certain communications identified in the First and Second Logs. *See generally* Brief in Support. At the very least, Plaintiff requests that the Court conduct an *in camera* review of those documents to determine whether the County's claim of attorney-client privilege is legitimate. *Id.* at 19-21. In his Brief in Support, Plaintiff is not precise in identifying the exact email communications he seeks to uncover, but in his Reply, he has highlighted certain documents he contends should be produced. *Id.* at 11; *see also* Reply at 5-6. Plaintiff's main concern is uncovering information surrounding the recommendation to terminate him, issued on June 21, 2019; he does not seek emails which include internal discussions regarding settlement, litigation strategy, briefing, and court hearings. Brief in Support at 11, 19; Reply at 5.

## II.     ARGUMENTS OF THE PARTIES

### A.     Plaintiff's Opening Arguments

The crux of Plaintiff's argument is that the privileged documents should be produced because the County attorneys were involved in the decision to recommend his termination. *Id.* at 19, 21.  First, Plaintiff believes that the email communications are not privileged at all. According to Plaintiff, the County cannot shield these highly relevant documents simply because they included attorneys.  To do so would be unfair and prejudice Plaintiff. *Id.* at 14, 16. Furthermore, he says that any decision to recommend termination was inherently a business decision and not made for the purpose of providing legal advice.  *Id.* at 18-19.  As a result, Plaintiff argues that the communications cannot be privileged.  Relatedly, Plaintiff argues that the County's claim of privilege is infirm because the First and Second Logs do not provide the level of detail required by the Federal and Local Rules of Civil Procedure.  Brief in Support at 13-16.

Alternatively, Plaintiff says that even if the communications are privileged, the County has waived the privilege by putting them at issue in this litigation.  *Id.* at 16-19.  He argues that courts routinely find waiver of privilege when a party attempts to use the information as a sword and as a shield.  *Id.* at 16. Based on the inconsistencies in the deposition testimony and affidavit, Plaintiff says that fairness dictates that he able to discover these documents and learn what happened with regard to the discipline investigation in real-time.  *Id.* at 17.  Additionally, Plaintiff reiterates that Fitzgerald's testimony indicates that the County attorneys collectively made the decision to recommend termination on June 21, 2019.  That was a business decision, making them fact witnesses in this litigation.  *Id.* at 19.

### B. County's Opposition

The County opposes the Motion and says that Plaintiff is simply disgruntled because despite taking a number of depositions, he was unable to establish who recommended termination.  Opposition at 1.  The County says that Plaintiff is incorrect in asserting that Mr. Kovats was not providing legal advice in communications prior to June 13, 2019 because he is counsel for the County in *Graham I*, as well as in this case.  *Id.* at 2-4.

Next, the County contends that it has met its burden in asserting that the communications are protected by the attorney-client privilege.  *Id.* at 5-6.  Each document withheld has been set forth in the First and Second Logs, and the entries provide descriptions of the purpose of each communication.  According to the County, any more detail would mean revealing the actual contents of the communication.  *Id.* at 5.

Finally, the County says that there has been no waiver of the attorney-client privilege— the simple fact that witnesses have offered conflicting testimony does not mean that the County is using the communications as a sword and as a shield.  *Id.* at 6.  The County further suggests that Plaintiff may explore this supposedly conflicting testimony at trial.  *Id.*

### C. Plaintiff's Reply

On Reply, Plaintiff reiterates that the County attorneys were not providing legal advice when they made the business decision to recommend termination of his employment.  Reply at 2-3.  Plaintiff also notes that there is a glaring gap in the County's document production during the critical period leading up to his removal on June 21, 2019.  *Id.* at 3.  Indeed, according to Plaintiff, the County has withheld every single email in which Fitzgerald, Kleinman, and/or Kovats were on from January to July of 2019.  *Id.* at 5.

### III.     LEGAL STANDARDS

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery. Subsection (b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  While the scope of discovery is broadly construed, it is not without its limits and may be circumscribed. *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).  The attorney-client privilege protects communications between the attorney and client to promote open and frank discussions. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  The privilege only applies if

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Shipyard Assocs., L.P. v. City of Hoboken*, Civ. No. 14-1145, 2015 WL 4623470, *4 (D.N.J. Aug. 3, 2015) (quoting *In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979)). To be sure, the attorney-client privilege only applies to a communication when the attorney is acting as an attorney; it does not apply where an attorney functions in a business or professional role. *Margulis v. Hertz Corp.*, Civ. No. 14-1209, 2017 WL 772336, *5 (D.N.J. Feb. 28, 2017). Because it is often difficult to determine whether certain advice is legal or business in nature, the inquiry "is focused on whether the communication is designed to meet problems that can fairly be characterized as predominately legal." *Leonen v. Johns-Manville*, 135 F.R.D. 94, 99 (D.N.J. 1990). Thus, the party asserting the privilege bears the burden to establish the applicability of the privilege and must "demonstrate that the communication would not have

7

been made but for the client's need for legal advice or services." *Munich Reinsurance Am., Inc. v. American Nat'l Ins. Co.*, No. 09-6435, 2011 WL 1466369, *17-*18 (D.N.J. Apr. 18, 2011).

In certain circumstances, a party may waive the privilege. For example, there may be express waiver by voluntary disclosure to a third-party, or implied waiver by placing the communications at issue in the litigation. *See Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1427 (3d Cir. 1991); *see also In re Human Tissue Prods. Liab. Litig.*, 255 F.R.D. 151, 158 (D.N.J. 2008).

## IV. ANALYSIS

The Court found that *in camera* review was necessary. On January 18, 2022, the undersigned ordered that the County produce to the Court all documents identified in the First and Second Logs that are dated between October 1, 2018 and July 31, 2019, which is the timeframe relevant to the termination recommendation. [Docket Entry No. 56]; *see also Renner v. Chase Manhattan Bank*, No. 98-926, 2001 WL 1819215, at *4 (S.D.N.Y. July 13, 2001) (finding *sua sponte in camera* review appropriate where "there has been at least some showing, however preliminary and indeterminative, that [the] communications may not be protected by the attorney-client privilege"). Without seeing the emails at issue, the Court could not make a full evaluation and wanted to avoid the risk of ordering the disclosure of protected information. *See ACLU of N.J. v. F.B.I.*, 733 F.3d 526, 534 (3d Cir. 2013) (noting that District Courts have the discretion to utilize *in camera* procedures in "circumstances involving sensitive information.")

In response to the Court's order, Defendant produced 96 pages of email communications identified on the Logs and dated between October 1, 2018 and July 31, 2019. The Court has now conducted an *in camera* review of the production in an effort to determine which of the communications, if any, related to the decision to recommend Plaintiff's termination or were

otherwise not related to the provision of legal advice. The Court notes that the review was complicated by the fact that during the operative time period, there was already pending litigation, *Graham I*, as well as a union hearing for which the County attorneys were preparing. Moreover, as mentioned, drawing a clear line as to when the County attorneys are providing legal as opposed to business or other advice can be a difficult task. *Leonen v. Johns-Mansville*, 135 F.R.D. 94, 98-99 (D.N.J. 1990).

Nonetheless, the Court is satisfied that all of the documents reviewed *in camera* are privileged. The documents relate to the provision of legal advice with respect to *Graham I*, *Graham II*, or the relevant union hearing. Even more important, the documents do not provide any insight as to who specifically made the business recommendation to terminate Plaintiff and when that decision was made. *Supernus Pharms. v. TWI Pharms., Inc., et al.*, No. 15-369, 2016 WL 5339594, at *2 (D.N.J. June 21, 2106) ("If the primary purpose was to provide legal advice or to prepare for litigation, the privilege applies.").

Furthermore, the Court finds that privilege has not been waived with regard to these communications. Plaintiff has argued that the County has waived privilege only to the extent they put their intent directly at issue by acting in a business capacity and making a personnel decision related to Plaintiff. Brief in Support at 2. Because Plaintiff does not argue that he is entitled to communications related to litigation strategy, and the County has not put any of its attorneys' legal advice at issue, the Court denies the Motion insofar as it seeks to compel the production of the communications at issue. *See Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 862 (3d Cir. 1994) (holding that a party waives privilege only "by asserting claims or defenses that put his or her attorney's advice in issue in the litigation").

Additionally, the Court recognizes that the First and Second Privilege Logs are not models of clarity and precision, but nonetheless, they contain the information required by the

Federal Rules. Rule 26(b)(5)(A)(ii) requires that a party asserting privilege describe the nature of the communications withheld in a manner that will enable the opposing party to assess the claim of privilege without revealing protected information. Here, the Logs name the authors and recipients of the emails, identify the privilege and reason(s) it is being asserted, and provide a brief description of the subject of the emails. While the descriptions leave something to be desired, the Logs provide enough detail for the Plaintiff to assess the claims of privilege. *See Lane v. State Farm Mutual Auto Ins. Co.*, No. 3:14-CV-01045, 2015 WL 2380009, at *4 (M.D. Pa. May 18, 2015). Moreover, the Court has reviewed a large portion of the documents identified on the Logs and is satisfied that they are appropriately designated as privileged. Because the Logs are satisfactory, the Court will not find that the County has waived the attorney-client privilege for the communications identified on them.

  While the Court finds that the documents at issue are privileged, and the County has not waived the privilege, there is a larger issue here that concerns the Court. Plaintiff has sued claiming that the termination was retaliatory. It is critical, therefore, for Plaintiff to be able to ascertain who made the recommendation to terminate and what that recommendation was based on. A review of the deposition testimony appended to Plaintiff's Motion demonstrates that County counsel have refused to answer questions based on what this Court deems inappropriate assertions of the attorney-client privilege. Indeed, and only by way of example, the identities of the individuals who took part in the process which led to the termination recommendation are not privileged. Additionally, the facts considered by the decision-makers or referred to in the process are likewise not privileged. *See, e.g., Salvagno v. Borough of Glen Ridge*, No. 08-2992, 2009 WL 2392887, at *1 (D.N.J. Aug. 3, 2009) (attorney-client privilege "extends only to communications but not the facts underlying the privileged communications") (citing *Upjohn*, 449 U.S. at 389)). While the Court denies Plaintiff's Motion, the undersigned, as part of my

10

authority to case manage this litigation, orders that the County identify and produce a witness for a deposition pursuant to Federal Rule of Civil Procedure Rule 30(b)(6), unless the parties agree to a different witness, who can provide testimony of the County as to the following narrow issues:

(1) Who participated in and/or contributed to the process which led to the recommendation to terminate Plaintiff made to the Freeholders. County witnesses, and in particular Kleinman, refused to answer questions on this topic based on an inappropriate view of the scope of attorney-client privilege. *See* [Docket Entry No. 53-6] at 14-15[3] (Kleinman refusing to answer question regarding who participated in and made termination recommendation based on attorney-client privilege), at 20 (refusing to answer question regarding whether Kleinman selected charges against Plaintiff); at 22-23 (refusing to answer question regarding who participated in and made termination recommendation); at 35 (same); [Docket Entry No. 53-7] at 87 (Kleinman refusing to answer whether he was part of collective decision to recommend Plaintiff's termination), 91-92 (refusing to answer whether Compton was involved in termination recommendation); 98 (same with regard to who checked box of disciplinary action to be taken against Plaintiff).

(2) What facts were considered in deciding to recommend Plaintiff's termination. This does not include any legal opinions of counsel but must include the facts considered and relied upon. *See* [Docket Entry No. 53-4] at 32 (Kleinman refusing to answer question regarding information used to make termination recommendation); at 55 (same); at 72-74 (same); at 166-67 (same).

---

[3] Page numbers in these two subparagraphs refer to those of the respective deposition transcripts.

If, after taking this final deposition, Plaintiff is still unable to discern who made the decision to recommend termination or what that decision was based upon, Plaintiff retains the right to address that deficiency by way of motions *in limine*. *See Mikulan v. Allegheny County*, No. 15-1007, 2017 WL 2374430, at *5-*6 (W.D. Pa. May 31, 2017) ("It would be extremely unfair to allow the County to withhold this evidence from [plaintiff] in discovery and then allow the County to turn around and argue that it did not discriminate against [plaintiff] based on the withheld legal advice."); *see also Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, No. 02-2116, 2006 WL 2289789, at *1 (W.D. Pa. Jan. 13, 2006).

V. **CONCLUSION**

**IT IS** on this **22nd** day of **February, 2022**,

**ORDERED** that Plaintiff's Motion to Compel [Docket Entry No. 53] is **DENIED**; and it is further

**ORDERED** that the County is ordered to produce a witness for a Rule 30(b)(6) deposition limited to the topics described above, to be conducted within 30 days of the entry of this Opinion and Order.

_____
LOIS H. GOODMAN
United States Magistrate Judge